CHRISTOPHER E. YATES, Plaintiff in Error, *v.* THOMAS MONROE et al., Defendants in Error.

### ERROR TO SCHUYLER.

In a bill for discovery, it is erroneous to make one a party who may be called as a witness on the trial of the cause for which the discovery is sought.

Upon the coming in of the answers to a bill for discovery, the injunction, which had been granted upon the filing of the bill, having been dissolved, it is practically an end of the suit upon such a bill. It is erroneous to continue the bill for discovery, or to allow a supplemental and amendatory bill to the original bill for discovery.

Yates *v.* Monroe et al.

A court of chancery will reject an application for a new trial on the ground of newly-discovered evidence, for the same reasons which would control a court of law.

The negligence of counsel employed by a party is the same as his own negligence, and he must suffer the consequences of it.

The sole object of a bill of discovery in aid of a suit at law, is to obtain a sufficient answer, and to stay the proceedings at law in the mean time. When such an answer is obtained, and the party has secured all the relief asked, or which the court could give, the bare dissolution of the injunction is equivalent to an order dismissing the bill, making a final disposition of the suit.

On the 15th day of August, 1850, C. E. Yates filed his bill in chancery against Thomas Monroe, Annis Monroe his wife, and William A. Hinman, in substance: That about January 1st, 1840, said Yates purchased of said Hinman a horse, for which he executed his note to Annis Hinman, (said Annis Monroe,) dated 4th January, 1840, payable to said Annis or bearer, one year from date, with twelve per cent. interest, conditioned " that said note might be discharged, within six months from the date thereof, by the sum of eighty-five dollars." That it was then understood and agreed that said note might be discharged by $75 prairie-breaking on the farm of one Benjamin Hinman, in the county of Schuyler, at $4 per acre. That Yates did, in the months of May, June, and July, 1840, break said prairie 35¾ or 37½ acres, in pursuance of said agreement. That afterwards, and in October, 1840, said prairie-breaking was measured and accepted by said William A. Hinman, which more than discharged said note. That said Monroes and Hinman have refused to deliver said note to Yates, and Monroe and wife, at the instigation of said Hinman, have instituted suit against Yates, in Schuyler Circuit Court, upon said note, contrary to equity and good conscience. Yates fears judgment may be rendered against him in said cause unless the said Monroes and Hinman are required to set forth and discover said matters. That some of your orator's witnesses reside in Utah and California; that until their evidence shall be obtained it will be unsafe for your orator to proceed to a trial of the said action, and injunction ought to issue and the defendant be restrained from any further proceeding in the said action at law commenced as aforesaid. Prayer of injunction, also summons, and defendants required to

answer on oath the matters in said bill, signed, sworn to, and filed.

Injunction ordered and issued.

William A. Hinman demurred to said bill.

Answer of Thomas and Annis Monroe admits the purchase of the horse, as stated by Yates, but denies that said horse was the property of said Hinman, and says that said horse at said sale was the property of said Annis; that said Hinman, in said sale and taking said note, acted as the agent of said Annis, and not otherwise; that said Hinman had no power other than to sell said horse for cash or on credit; admits the making of note, as stated in bill, but denies that at the sale of said horse and taking said note, it was understood and agreed between said Yates, Hinman, and said Annis, that said note might be discharged by Yates for $75, or any other sum in breaking prairie at any price; and says that if any such agreement was made, it is void at law and in equity, because not contained in said note, and is inconsistent with it, and is not admissible in evidence, at law or in equity, to contradict said note; that said note was to be paid in money; denies all knowledge or belief of such agreement as stated in said bill, and says they have been informed and believe no such agreement was ever made between said Yates and Hinman, and that if any such agreement was made it was without authority of said Annis, and without her knowledge or subsequent ratification, and disclaims said agreement, and insists upon their legal rights; admits that Yates did break prairie on farm of B. Hinman, but when, how many acres, at what price, or how much it was worth, they have no knowledge and cannot answer, but denies that said prairie-breaking was done in pursuance of said agreement set out in said bill, or any other between said Yates and said Hinman as the agent of said Annis; denies that said breaking was done in discharge of said note, or that Yates is entitled to credit on said note by reason thereof, or on any other score; knows nothing of the measurement of said prairie-breaking mentioned in said bill; denies that they have combined and confederated with said Hinman or any other person to defraud said Yates in the premises; denies that they have refused to deliver said note, or that said Yates

ever requested or demanded the delivery of said note to him, and says Yates never pretended, alleged, or hinted to them or either of them that he claimed a credit on said note on account of said prairie-breaking, or that he was entitled to any credit on said note until about the time they commenced suit upon said note, as alleged in said bill of complaint, but always said he would pay said note, and made promises as to the time when he would pay said note, and some of those promises were made to said Thomas since the commencement of said suit at law; denies they were instigated by said Hinman to commence said suit, but admits they have instituted and were and are prosecuting suit on said note, to collect the sum as stated in said bill; denies that it is contrary to equity, but is thoroughly in accordance with equity; that the note is of almost ten years' standing, and remains wholly unpaid, and denies that Yates has any legal or equitable defence to said note, and says that the allegations in said bill contained are wholly untrue; denies that the court have power to stay the proceedings in said suit at law, to obtain the testimony of witnesses from Utah and California; that Yates has ample remedy at law; denies that they have refused to discover the truth touching the matters in said bill; that they never were called upon for such discovery; denies all unlawful combinations and confederations wherewith they are charged.

Replication of Yates filed to said answer.

Decree dissolving injunction shows that the parties, by their solicitors, appeared; that said Thomas and Annis Monroe moved the court to dissolve said injunction. Said motion coming on to be heard on bill and answer, it is ordered and decreed that said injunction be dissolved, and said Annis and Thomas Monroe have liberty to proceed with said suit at law. It is further ordered that this cause be continued to the next term of this court.

Yates, by his counsel, moved the court for leave to file his amended and supplemental bill in this cause, which was exhibited, sworn to by said Yates, and was entitled " Christopher E. Yates *v.* Thomas Monroe, Annis Monroe, W. A. Hinman, and William A. Patterson."

Yates v. Monroe et al.

Whereupon it was ordered by the court: " And now on this day the motion made herein on this day for leave to file a supplemental bill herein came on to be heard, and, after argument, said motion was overruled and said leave refused. Thereupon the said Yates tendered his bill of exceptions, which was signed and sealed by the court. Thereupon a *pro formâ* decree was made dismissing the original bill, with a view to the prosecution of an appeal or writ of error herein."

This cause was heard before MINSHALL, Judge, in the Schuyler Circuit Court.

WARREN & EDMUNDS, for plaintiff in error.

R. S. BLACKWELL, for defendants in error.

CATON, J. The decree in this case must be affirmed. The first bill filed was purely a bill of discovery to aid in the defence of an action at law, seeking no other relief. It was filed against the plaintiffs in the action at law, and against Hinman, who was not a party to that record. The other defendants answered satisfactorily. Hinman demurred, and for good cause. Had he answered the bill of discovery, his answer could not have been used as evidence on the trial at law. He was a competent witness on that trial, and the plaintiffs in that action had a right to insist that he should be called to the stand, that they might cross-examine him.

Upon the coming in of the answers, the injunction, which had been granted upon filing the bill of discovery, staying proceedings in the action at law, was dissolved, and there was practically an end of that suit. The complainant had then obtained all the relief which he had asked and all that the court had power to grant. Instead of entering an order formally disposing of the suit, the Circuit Court ordered it to be continued. After the dissolution of the injunction, the plaintiffs in the action at law proceeded with it and obtained a judgment. At the next term of the court the defendant in that action presented a supplemental and amendatory bill to the original suit for discovery. This bill sets up precisely the same defence to the action at law

Yates *v.* Monroe et al.

which had been set up in the original bill of discovery, not varying that defence by the introduction of a single new fact. And even the evidence relied upon in support of those facts is the same as that set up in the bill of discovery, with the exception that in this bill it is averred that the party once had some papers and receipts in relation to the breaking of the prairie and the note, which would establish the payment as contended for, and which Hinman had surreptitiously got into his possession and refused to return. What those papers were, or what their contents, is not shown. This bill, however, shows that this transaction occurred many months before the original bill was filed, and of course within the knowledge of the party, and there can be no good reason why it was not introduced into that bill except that the party had the means of compelling the production of those papers, upon the trial at law, by means of the process of the court of law. Hinman was a competent witness, and had possession of the papers, and, by means of a *subpœna duces tecum*, the party could there have obtained more appropriate and complete relief than a court of chancery could properly grant him.

The reasons set forth in this bill for asking the court to open the judgment and allow a reinvestigation of the controversy are entirely insufficient. They consist in averments of the negligence of counsel employed in not attending court, the inexperience of other counsel employed and ignorance of the practice of the court, on which account the original bill was inartificially drawn, and that the defendant in the action at law was advised by his counsel that the cause would not be tried at the same term at which the injunction was dissolved, and for that reason he was not present when the cause was tried and the judgment rendered, and that no proper defence was made. It is due in justice to the solicitor who drew the original bill of discovery to say, that so far as we are capable of judging, from all that we have learned of this case, that bill seems to have been drawn with skill and judgment.

If the grounds of relief here relied upon were held sufficient to authorize a court of chancery to set aside a judgment at law regularly obtained, and to open anew the controversy, there

might never . be an end of litigation; society could no longer repose upon the security of judicial decisions, and judgments and decrees of courts would cease to be looked upon as the end of disputes. All of the defence which the party ever claimed to have was cognizable in the court of law, and the complainant shows by his own bill that all his evidence to prove that defence was at all times within the reach of the process of that court. He shows clearly that his whole defence could have been established by the testimony of Hinman, who, so far as appears, was always within the reach of the process of the court. If it be true that Hinman's interests were hostile to him, that would not give him a right to seek his remedy in a court of equity. That is a misfortune to which suitors are often subject; and certainly he had as reasonable a prospect of getting a fair statement from Hinman on the witness stand, as in an answer to a bill in chancery; and it is nowhere pretended, that Hinman would have testified falsely had he been called upon the stand.

Another ground for the relief sought is, that since the judgment at law was obtained, the party has discovered several witnesses by whom he can prove his defence. But their testimony, as he shows it, would only be cumulative to the evidence already within his knowledge and reach; and the only excuse which he offers for not having produced them upon the trial is, that he had forgotten that those witnesses knew any thing about the matter, owing to the length of time which had intervened since the note was given. This is not sufficient to justify the interference sought. The same reason exists for rejecting an application for a new trial, made to a court of chancery, on the ground of newly discovered evidence, which would determine a court of law upon a motion for a new trial. In the case of The People *v.* Superior Court, 10 Wend. 294, SAVAGE, C. J., said, " It is certain, however, that the testimony of Russell was, at one time before the trial, known to the cashier; it was his duty to have remembered it. If he had forgotten it, I think it is no reason for granting a new trial. To open the case on such a ground, is liable to the objection, that it would enable parties to prepare testimony for a second trial, when they had seen the strength of their adversaries' case, and the weakness of

their own, and thus open a door to perjury." The same rule was held, in the case of Bond *v.* Cutter, 7 Mass. R. 207. The pretended revival in the memory of long-forgotten testimony, under the quickening influence of a judgment against the party, is too suspicious to justify a court to disturb a judgment which has been regularly obtained.

The negligence of the counsel, whom he had employed to attend to the cause, is the same as his own negligence, and he must suffer the consequences of it. Field *v.* Matson, 8 Mis. 686.

Throughout this bill are reiterated charges against the plaintiffs in the action at law, and Hinman, of fraud, combination, and conspiracy, which, when carefully examined, may all be summed up in the single charge, that they were seeking to collect a note, which the complainant avers had been paid, and which, according to his own showing, might have been proved upon the trial at law, but for his own carelessness or forgetfulness, or for the carelessness or improper advice of those for whose acts he is responsible. If he had a legal defence, he had an opportunity of showing it in the proper forum, and at the the proper time. Having failed to do so, he must suffer the consequences. Perhaps but few judgments are rendered, where parties suppose they had a defence, and which they had neglected to make, in which as strong a case for relief might not be presented, as the one which is now before us. We cannot set the precedent for overturning judgments at law upon such grounds. Should this judgment be set aside, it would be offering a premium to men to neglect their own business.

I have examined this bill upon its merits, without regard to any technical rules as applicable to the mode in which it was ·presented; and we have seen, that had it been an original bill, for the purpose of obtaining a new trial in the action at law, it does not show such a case as would justify the interference of the court. The complainant shows his own case to be destitute of merits, or if he had any, that they have been forfeited by his own laches. Had the bill shown sufficient merits to justify the interposition of the equitable powers of the court, the new fact which is averred, that is, the rendition of the judgment against

him, is sufficient to give it the proper character of a supplemental bill, and the court would have erred in refusing to allow it to be filed in a suit in which such a bill could be admitted. As it was, the court exercised a sound discretion in refusing leave to file this as a supplemental bill.

As an amendment to the original bill, it was rejected with equal propriety. After the coming in of the answer to the bill of discovery, the complainant may, undoubtedly, where the answer suggests the propriety of such a course, so amend his bill, as to entitle him to relief also ; but it does not follow, that this may be done, after the court has finally acted upon the case as presented by the bill and answer, by dissolving the injunction. At least, I am not aware of any precedent for such a course. The sole object of a bill of discovery in aid of a suit at law, is to obtain a sufficient answer, and to stay the proceedings at law in the mean time. · When such an answer is obtained; the end of the suit is answered, and the party has secured all the relief asked, or which the court of chancery could give ; and the bare dissolution of the injunction has been held to be equivalent to an order dismissing the bill, and a final disposition of the suit.

Such, however, seems not to have been the view taken in the court below, for the complainant filed a replication to the answer, thus forming an issue in a case which was already virtually disposed of, and which the court had not the power to try. The answer was not for the use of the Court of Chancery, but was to be used on the trial at law. If it was untrue in any respect, there was the place to show it. The court, however, instead of treating the suit as disposed of, continued it, when no legitimate purpose could be answered by its remaining upon the docket. The complainant, if he had merits properly cognizable in a court of equity, should have presented them in the shape of an original bill, without attempting to impart vitality to the old suit.

But, admitting that all which was done was regular, and that it was not now too late so to amend the bill as to convert it into a bill for relief, the complainant ceased to have an absolute right to amend, after the replication was filed ; and could only do so by leave of the court. In determining whether leave

should be granted, it was the duty of the court to look into the proposed amendment, and see whether it presented such a case as entitled the party to relief. We have already seen that such was not the character of this bill or amendment; and that being the case, the court may very properly refuse to lend its countenance to the continuance of a litigation, which could result in no good, but only serve to involve the parties in renewed vexation and further expense. The decree is affirmed.

*Decree affirmed.*