(No. 15857.—Decree affirmed.)
EDWARD F. METZGER, Appellant, vs. ERNEST HORN et al.
Appellees.

*Opinion filed April 14, 1924.*

1. EJECTMENT—*equitable title cannot be set up to defeat legal title of plaintiff—equity.* An equitable title cannot be availed of by defendant to a suit in ejectment for defeating the legal title of the plaintiffs, but equity will, in a proper case and on a bill filed for the purpose, enjoin the prosecution of the ejectment suit until the bill can be heard and the nature of the title determined and declared.

2. SAME—*judgment in ejectment is final as to title established.* Under section 34 of the Ejectment act every judgment in ejectment is conclusive as to the title established in the action, subject to the right of the defeated party to a new trial as provided in the statute; and the appointment of commissioners under section 55 does not postpone the finality of the judgment until the coming in of the commissioners' report.

3. EQUITY—*general rule as to when equity will enjoin enforcement of judgment.* The jurisdiction of a court of equity to enjoin the enforcement of a judgment is not a favorite subject of such jurisdiction, and it is not sufficient simply to show injustice has been done by the judgment, but it must also appear the judgment was not the result of inattention or negligence on the part of the party seeking the injunction.

4. SAME—*when equity will not enjoin judgment in ejectment.* Equity will not enjoin the enforcement of a judgment in ejectment establishing the legal title in the plaintiffs, where the complainant seeking the injunction was informed of his equitable interest and that it was of no avail to him as a defense in the ejectment suit but nevertheless delayed for fifteen years to assert his rights in equity, four years of which period intervened after the final judgment was rendered against him.

APPEAL from the City Court of East St. Louis; the Hon. WILLIAM F. BORDERS, Judge, presiding.

J. R. McMURDO, and KEEFE, BAXTER & MILLER, for appellant.

W. L. PROFFER, for appellees.

Mr. Chief Justice Farmer delivered the opinion of the court:

This appeal is prosecuted from a decree of the city court of East St. Louis dissolving a temporary injunction and dismissing for want of equity a bill filed by appellant to enjoin appellees from further prosecuting a suit in ejectment against appellant until the rights and interests of the parties alleged in the bill should be adjudicated in a court of equity.

The material facts upon which the bill was predicated are, that on and prior to March 2, 1877, Gustav Horn was the owner of the undivided one-half of the premises involved in the ejectment suit, and on that day he and his wife, Emilie, executed a quit-claim deed for the property to John Polish, the father of Emilie, who, pursuant to an agreement with the grantors, conveyed the property to Emilie. In 1885 Horn purchased from the owners the other undivided one-half of the property and caused the deed to be made to Emilie, who thereby became vested with the legal title to the entire interest in the property. At the time the deed was made by Horn and wife to Polish and at the time of the purchase of the other undivided one-half of the premises by Horn he was in bad health and was the father of six minor children by his wife, Emilie. He desired his wife to become the owner of the property if he should die, but it was to be re-conveyed to him if he recovered his health. Mrs. Horn frequently expressed her willingness to convey to her husband after his health became good, and requested him to prepare a deed for that purpose. He neglected to do so, and about May 10, 1886, Mrs. Horn gave birth to triplet children. She died six days later and the triplet children died about one week after her death. In January, 1888, Horn filed a bill against his six surviving children, who were all minors, alleging his wife held the title to the property in trust for him and that he was the beneficial owner thereof. A decree was rendered against

the defendants in the city court of East St. Louis granting the relief prayed in the bill. The decree found Mrs. Horn acquired only the legal title to the property and that she held it in trust for her husband, who was the equitable owner thereof, and that Mrs. Horn's children, all of whom were minors, acquired only such rights in the property as she had while living, and that Horn was entitled to a conveyance of the legal title then vested in the defendants as heirs-at-law of Mrs. Horn. The decree ordered the master in chancery to execute to Horn a deed for the property. Horn was in the possession of the property and so remained until 1902, when he conveyed it to Edward Metzger, appellant, by warranty deed, and Metzger went into possession. Horn died in July, 1906, and a few days after his death two of his children, Theodore and Ernest, brought an ejectment suit against Metzger and others, claiming title to an interest in the property as heirs of the three deceased infants. There was a judgment in favor of Metzger, and plaintiffs in the ejectment suit prosecuted an appeal to this court. This court held the decree and the master's deed in the chancery proceeding vested in Horn the title of his six children, who were made defendants to the bill, which descended to them as heirs of Emilie Horn, which was one-ninth to each of them in the property; that Horn's six surviving children, together with their father, acquired the remaining three-ninths as heirs of the three deceased infants, and the decree did not affect or purport to affect that interest in the property, and neither the decree nor the master's deed transferred title to that share of the property to Horn. The judgment was reversed and the cause remanded. (*Horn v. Metzger*, 234 Ill. 240.) At the same term of court that case was decided, another case was presented and decided involving the effect of the decree and the master's deed in the chancery suit of Horn against his six children, and it was again held they did not vest in Horn the legal title to the three-ninths inherited by the

three deceased infants from their mother; that the father inherited one-fourth of said three-ninths; that each of the surviving children inherited one-eighth of said three-ninths, and the legal title to said interests was still vested in them. This court remanded the ejectment suit. It was again tried in the city court and a verdict returned in favor of defendant, and this verdict was set aside. The case was tried again in the same court and a judgment rendered in favor of plaintiffs on July 26, 1919. An application was granted for the appointment of commissioners, as provided by the statute, to ascertain and report the value of the premises, with and without the improvements, the rents collected by Metzger, expenditures by him for maintaining the premises in repair, and payment of taxes. The property was a vacant lot when Metzger bought it from Horn, and he had erected a brick building on it before suit was brought, with stores on the first floor and living apartments on the second. The commissioners appointed, after making two reports, objections to both of which were sustained, were discharged and new commissioners appointed, with directions to report April 7, 1923. On April 6, 1923, Metzger presented the bill in this case to the judge of the city court of Granite City, sitting in the city court of East St. Louis at the request of one of the judges, setting out the decree rendered by the city court in 1888 in the suit of Horn against his six surviving children, in which it was adjudged that Emilie Horn held the legal title to the property in trust, and that her husband, Gustav, was the beneficial or equitable owner thereof. The bill alleged Metzger had paid $4000 for the vacant lot and had erected a building thereon at a cost of $15,000, and prayed that he be declared to be the equitable owner of the interest claimed by plaintiffs in the ejectment suit by purchase from Horn, and that plaintiffs be enjoined from further prosecuting their suit in ejectment or from taking any steps in said suit until the rights

and interests of all the parties should be adjudicated under the bill. The injunction was granted without bond and without notice to the defendants. There are two judges of the city court of East St. Louis, and the case was assigned by the clerk to the division presided over by Judge Borders. Defendants to the bill answered, denying its material allegations, and filed a motion to dissolve the injunction and dismiss the bill for want of equity. The motion was set down to be heard on the 21st of July, 1923, and on that date the complainant filed his affidavit praying a change of venue on account of the prejudice of the judge. The affidavit was sworn to on the 20th of July and alleged knowledge of such prejudice did not come to petitioner until the 14th of July. No notice was given defendants of an intention to apply for a change of venue. The court denied the motion and entered a decree dissolving the injunction and dismissing the bill for want of equity, from which decree this appeal is prosecuted.

Appellant's contention is that the decree of the city court of 1888 was an adjudication that Emilie Horn held the legal title to the property in trust for her husband, who was the equitable owner thereof, and that by the warranty deed from Horn to appellant he (appellant) became the equitable owner of the interest in the title which descended from Emilie Horn to the three deceased infants and the legal title to all their interest in the property. As only legal titles prevail in an action of ejectment, appellant could not avail himself of his defense as the equitable owner in the ejectment suit, and it is contended the court erred in dissolving the injunction and dismissing the bill until a hearing could be had on the merits thereof.

The bill in this case is based on the theory appellees claimed to have acquired their title by descent from the three deceased infant children of Emilie Horn; that she only held the legal title in trust for her husband, who was the beneficial owner, which was declared in the decree of

312—12

1888, never appealed from, and that the deceased children only inherited the legal title, subject to the trust. It is claimed the judgment for appellees in the ejectment suit is contrary to the decree of the city court of 1888, and the prayer is for a decree that Emilie Horn had no interest in the property except that she held the legal title in trust for her husband, and at her death her surviving children inherited her title, subject to the same trust for the beneficial owner, Gustav Horn, and that the interest and title the deceased triplet children inherited from their mother was subject to the equitable right of their father and passed to the surviving children at the death of the triplets, subject to the same right of Horn, and his legal and equitable title passed to appellant by the warranty deed from Horn.

While the bill alleges the judgment for plaintiffs in the ejectment suit was contrary to the decree of 1888, this court, as we have seen, decided that it was not. There can be no doubt the deceased triplet children inherited from their mother only the same character of title she held, which was decreed to be the naked legal title held in trust for her husband, who was the beneficial owner, and appellees inherited from the deceased infants the same kind of title the infants had. This court, as we have seen, held in the ejectment suit, and in another suit which involved the effect of the decree and the master's deed made pursuant thereto, that the decree and master's deed did not affect the title inherited by the deceased infants from their mother. Instead of the judgment for plaintiffs in ejectment being contrary to the decree of 1888 it was in harmony with it as the decree was construed by this court. We think it must be held that Horn's deed conveyed all the title he had to the property, which was the legal title to the entire interest, except the interest inherited by the three deceased infants from their mother and by plaintiffs from the deceased infants. As to that share of the property appellant acquired only the equitable title of the grantor. The legal title was in appellees,

and appellant's equitable title could not be availed of by him in an action of ejectment to defeat the legal title.

The ejectment suit was begun by appellees in July, 1906. The first trial resulted in a judgment for defendant there, appellant here. This court reversed that judgment and remanded the case in April, 1908. (*Horn* v. *Metzger, supra.*) The case was again tried, a verdict returned for defendant, and that verdict was set aside. It was not again tried until July, 1919, eleven years after the reversal, when a judgment was rendered for appellees, who were the plaintiffs in that suit. As we have said, no appeal was prosecuted or writ of error sued out to review the judgment, and the bill in this case was not filed until April, 1923, almost four years after the judgment was rendered. Appellant contends the judgment never became final, but only interlocutory, until the commissioners reported and the report was approved. Section 34 of the chapter on ejectment provides that every judgment in ejectment shall be conclusive as to the title established in the action. That, of course, is subject to the right of the court to grant a new trial, or the right of the defeated party to a new trial, upon the payment of costs, within one year, as provided by section 35. Section 55 provides for the appointment of seven persons (five of whom shall have authority to act) to value improvements made before notice of the adverse claim and do other things enumerated in said section, and upon their report a judgment may be entered and execution issued. The contention that the judgment does not become final until the commissioners' report is approved, we think is untenable. The judgment is final as to the title established when rendered, but for the exceptions referred to. Where a plaintiff in an ejectment suit has the naked legal title to property of which the defendant is the equitable owner, equity may, on a bill filed for that purpose, enjoin the prosecution of the ejectment suit until the bill can be heard and the nature of the title determined and declared, but

we are obliged to treat the bill in this case as a bill to enjoin the enforcement of a final judgment. The jurisdiction of a court of equity to enjoin the enforcement of a judgment, while well established, is not a favorite subject of such jurisdiction, and it will not be sufficient simply to show injustice has been done by the judgment, but it must also appear the judgment was not the result of inattention or negligence. (*Vennum* v. *Davis,* 35 Ill. 568.) The party seeking the injunction must show a clear case of diligence. (1 High on Injunctions, sec. 113.) The decision of this court in 1908 in *Horn* v. *Metzger* held the legal title to the share of the property claimed by plaintiffs in the ejectment suit was in plaintiffs, and reversed the judgment in favor of the defendant and remanded the case. The effect and plain meaning of that decision was that appellant's equitable title could not be availed of in defense of that action. With that knowledge, appellant did not take any step to try to enjoin the further prosecution of the suit until he could have a court of equity adjudicate the nature of his title but remained inactive until the case was again tried eleven years later, and then, we must presume, again relied upon the same title he sought to establish at the first trial, and which, under our decision, could not be availed of. He remained inactive, after the judgment against him, four more years before he filed the bill. Commissioners appointed under section 55 of the Ejectment act, after the judgment, made two reports, both of which were disapproved on objections of plaintiffs in that suit, and finally new commissioners were appointed. The day preceding the date the new commissioners were directed to report, which was fifteen years after the decision of this court, the bill was filed. It is true, the parties remain the same, and it is not shown any changes have occurred to alter their situation, but we are of opinion that whatever appellant's rights may have been if he had been diligent in asserting them, in view of the history of the case and his long delay in at-

tempting to have his equitable title declared until fifteen
years after he had knowledge he could not avail of it in
the ejectment suit and four years after final judgment was
rendered against him, he has been guilty of such negligence
that a court of equity will not interfere in his behalf. The
case presented is not one where lack of knowledge of the
facts he now asserts did not come to him until about the
time he filed his bill. All the facts he now alleges he knew
for fifteen years before he filed the bill in this case, and
his own negligence and delay prevent him from now ap-
pealing to a court of equity for relief.

We are of opinion the court did not err in refusing a
change of venue and in dissolving the injunction and dis-
missing the bill.

The decree is affirmed.